# UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF LOUISIANA

Thieu Duong

     *Petitioner*,

       v.

Scott LADWIG, Field Office Director,
New Orleans Field Office, U.S. Immigration
& Customs Enforcement; Todd LYONS,
Director of U.S. Immigration & Customs
Enforcement; Markwayne MULLIN, Secretary, U.S.
Department of Homeland Security; Pamela
BONDI, Attorney General, U.S. Department of
Justice; Stacy GRIFFIN, LaSalle Corrections
Facility Administrator, Louisiana ICE Processing
Center, in their official capacities,

     *Respondents.*

Case No. 26-278

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

1.     This case concerns the arbitrary arrest and indefinite detention of Petitioner, who was previously placed on community supervision, without reason, notice, or any process whatsoever.

2. Thieu Duong was previously released from ICE custody pursuant to an Order of Supervision ("OSUP"), after ICE made an express determination that Petitioner did not present a danger to the community, did not present a flight risk, and was not likely to be removed in the reasonably foreseeable future. See 8 C.F.R. §§ 241.4(e), 241.13(f)-(h). Since being released by ICE, Petitioner has lived a stable, peaceful, and full life. He has married and established a successful business. Critically, Petitioner has faithfully and timely complied with every condition of his OSUP, including check-ins.

3.     Once an OSUP has been granted, ICE's own regulations govern the process to revoke it. See 8 C.F.R. §§ 241.4(l), 241.13(i). These regulations provide due process protections and guard against arbitrary revocation by requiring both notice and an opportunity to be heard.

2025, without cause and without following its own binding regulations, the Immigration and Nationality Act, or the U.S. Constitution, ICE arbitrarily rearrested Petitioner at his scheduled OSUP check-in.

5.      At time of his arrest, ICE did not explain its reasons for revoking Petitioner's OSUP, nor, did they ask Petitioner any questions about his current compliance with OSUP and the determination that his removal was not reasonably foreseeable. Neither of which has changed since Petitioner was released on OSUP originally.

6.      Vitally important here is that there are no changed circumstances in the Petitioner's situation to lead ICE to believe that since his original release, Petitioner had become a danger to the community or a flight risk such to warrant redetention. In fact, to the contrary, Petitioner has only strengthened the ties to his community, followed all laws of the United States, and religiously adhered to all the requirements of OSUP.

7.      Moreover, at the time of his arrest, ICE did not have a specific plan to remove the Petitioner in the reasonably foreseeable future. Petitioner is from a country to which the United States does not regularly deport long-time residents of the United States. ICE did not indicate at all that it had overcome the barrier to removal when Petitioner was redetained.

8.      Just as there was no lawful reason to hold Petitioner in detention at the time of his initial release, there is no lawful reason to hold Petitioner in detention now.

9.      Petitioner is held in the Louisiana ICE Processing Center . His detention has no end in sight.

10.     Because Petitioner's liberty was revoked in blatant violation of law, his ensuing detention serves no lawful purpose, and there is no likelihood of removal in the reasonably foreseeable future, Petitioner seeks his immediate release.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus authority); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1651 (the All Writs Act); and Article I, Section 9, clause 2 of the Constitution (the Suspension Clause).

federal courts have jurisdiction to hear habeas claims brought by noncitizens challenging the lawfulness of their detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (recognizing habeas jurisdiction over immigration detention challenges); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (same); *Tran v. Mukasey*, 515 F.3d 478, 482 (5th Cir. 2008) (same).

13.    Venue properly lives in this district under 28 U.S.C. §§ 1391(b) and (e)(1)(B) because the events giving rise to Petitioner's claim took place here.

## PETITIONER

14.    Thieu Quoc DUONG, a.k.a. Jason Duong is a 42-year-old citizen of Vietnam who has lived in the United States since his arrival as a Lawful Permanent Resident on February 22, 1993, at the age of nine. Mr. Duong entered military service as an active-duty member of the U.S. Navy in 2002. He was originally taken into ICE custody on June 21, 2007. Although he received a removal order on July 20, 2007, Mr. Duong was placed on OSUP in October 2007. For the next 18 years, Mr. Duong reported to all his check-in appointments and followed all conditions of his OSUP. On October 16, 2025, he was arbitrarily arrested without any process at an ICE check-in. He is currently detained at the Louisiana ICE Processing Center in Angola, Louisiana.

## RESPONDENTS

15.    Scott LAWDIG is named in his official capacity as Director of the New Orleans Field Office for Immigration and Customs Enforcement within the Department of Homeland Security. He is responsible for the administration of immigration laws and the execution of detention and removal determinations for individuals under the jurisdiction of the New Orleans Field Office. As such, he is the custodian of the Petitioner.

16.    Todd LYONS is named in his official capacity as the Director of Immigration and Customs Enforcement within the Department of Homeland security. As such, he is the Petitioner's custodian.

17.    Markwayne MULLIN is named in his official capacity as the Secretary of the Department of Homeland Security. He is responsible for the administration of the immigrations laws pursuant to 8

U.S.C. §1103(a). Secretary Ronald NOELLE is legally responsible for the custody of noncitizens in detention and removal. As such, he is the custodian of Petitioner.

18. Pamela BONDI is named in her official capacity as the Attorney General of the Department of Justice. She is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g). She is legally responsible for administering proceedings in immigration court, including any bond hearings and is the legal custodian of Petitioner

19. Stacy GRIFFIN is named in her official capacity as the facility administrator of the Louisiana ICE Processing Center. As such, she is the custodian of the Petitioner.

## STATUTORY AND REGULATORY FRAMEWORK

20. When a noncitizen has been ordered removed from the United States, the government must generally remove that person within a 90-day period. 8 U.S.C. § 1231(a). After that initial removal period, ICE may only detain noncitizens if they are (1) inadmissible, (2) removable due to certain enumerated violations, or (3) have been determined to be a danger to the community or "unlikely to comply with the order of removal." 8 U.S.C. §1231(a)(6). In *Zadvydas v. Davis*, the U.S. Supreme Court found that § 1231(a)(6) must be read to include a prohibition on indefinite post removal period detention, pointing out that the detention of a noncitizen beyond six months while awaiting removal may raise constitutional concerns. 555 U.S. 678, 699-701 (2001).

21. ICE may also release a noncitizen from detention after the removal period, subject to certain conditions on OSUP. 8 U.S.C. § 1231(a)(1)(A).

22. DHS has promulgated two regulations, 8 C.F.R. §§ 241.4, 241.13, that govern when a noncitizen may be released on OSUP and when that release can be revoked.

23. Release on OSUP requires a fact-intensive inquiry into the noncitizen's suitability for release and undergoes an extensive administrative review. 8 C.F.R. § 241.4(e); *see also* 8 C.F.R. § 241.4(i). Once released on OSUP, a noncitizen must strictly comply with the corresponding requirements which can include periodic in person reporting and obtaining advance approval before traveling outside of a prescribed boundary. 8 C.F.R. §§ 241.4(i); 241.5(a).

conditions of release," or certain circumstances have changed such as the likelihood of their removal. 8 C.F.R. § 241.4(I)(1).

25.    8 C.F.R. § 241.4(l) and § 241.13(i)(3) outline the procedural protections ICE must provide to released noncitizens whom they seek to redetain. These regulations impose four key requirements.

26.    First, the **designated officials and findings requirement.** Only certain ICE officials have authority to revoke release. The OSUP revocation regulations clearly explain that only the Executive Associate Commissioner[1] has the authority to revoke an OSUP. 8 C.F.R. § 241.4(l)(2). A lower-ranking ICE official, the "district director," may revoke an OSUP, but only after making findings that revocation is "in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

27.    Second, the **notice requirement**. 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) both require that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release." These reasons must be specific enough to allow the noncitizen an opportunity to meaningfully respond to them.

28.    Third, the **interview requirement**. 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) both require ICE to provide noncitizens with "an initial informal interview promptly after his or her return to Service custody." The purpose of this interview is "to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

29.    Fourth, the **finding of likelihood of removal requirement**. When ICE seeks to revoke an OSUP not because of a violation or change in the appropriateness of release, but instead

---

[1] This title refers to a position under the now-defunct INS. The modern-day equivalent is the Executive Associate Director of ICE. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[T]he Executive Associate Commissioner [of] INS is equivalent to the Executive Associate Director [of] ICE." (citing 8 C.F.R. § 1.2)); *see also* ICE Leadership, Department of Homeland Security, https://www.ice.gov/leadership (last accessed December 8, 2025) (listing Marcos Charles, John Condon, and Susan Dunbar as the current Executive Associate Directors and Acting Executive Associate Directors of ICE).

to effectuate the agency's authority to make a specific finding as to the likelihood of removal. ICE can only revoke an OSUP in these circumstances if it can show that "*on account of changed circumstances*" that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added).

30.    ICE may revoke a noncitizen's OSUP and redetain them only after meeting these requirements.

## STATEMENT OF FACTS

31.    Petitioner in this action has been previously ordered removed from the United States and subsequently released from immigration detention. Petitioner was previously released on OSUP after the government made a determination that, *inter alia*, the Petitioner did not present a danger to the community, did not present a flight risk, and/or was not likely to be removed in the reasonably foreseeable future. *See* 8 C.F.R. §§ 241.4(e), 241.13(f)–(h).

32.    Petitioner has a specific, diplomatic barrier to removal, because he is from a country to which the United States does not regularly deport longtime residents of the U.S. (*e.g.*, Cuba), and/or are unlikely to be accepted to a third country due to their criminal history, age, or another criterion.

33.    Petitioner has complied with every condition of his OSUP. Since being released on an OSUP, Petitioner has not been arrested, charged or convicted of a crime, missed an OSUP check-in appointment or otherwise indicated that he poses a risk of flight. Instead, Petitioner has established or deepened his ties to the community in the United States by marrying a U.S. citizen and developing his own business.

34.    Nevertheless, ICE redetained Petitioner in October of 2025.

35.    Petitioner was not provided with any specific reason showing why it was necessary or appropriate to revoke his OSUP now, after all this time, and redetain him.

36.    Petitioner did not receive an informal interview regarding ICE's decision to revoke his OSUP and redetain him, either when he was being redetained or at any point since. Nor was Petitioner given the opportunity at any point to submit any evidence or information showing that

there is no significant likelihood of removal in the reasonably foreseeable future that he had not violated the order of supervision.

37.     Petitioner did not receive paperwork from ICE showing that their OSUP had been revoked by the Executive Associate Director or by a district director after making the required findings.

38.     Petitioner did not receive any information from ICE showing that the agency had determined that specific circumstances had changed in his case such that removal was now likely.

39.     Petitioner has been detained over three months since his rearrest. Petitioner's specific, diplomatic barrier to removal remains in place.

40.     Petitioner is currently detained at the Louisiana ICE Processing Center, a.k.a. Camp 57.

41.     Petitioner, Thieu Quoc Duong. a.k.a. Jason Duong, is a 42-year-old citizen of Vietnam who has lived in the United States since his arrival as a Lawful Permanent Resident on February 22, 1993 at the age of nine.  Mr. Duong entered military service as an active duty member of the U.S. Navy in 2002 and served approximately one year of active duty before being dishonorably discharged from the Navy.

42.     On April 19, 2004, Petitioner is a was convicted of Mayhem and with a one-year enhancement was sentenced to five years total incarceration.

43.     Petitioner was transferred into ICE custody on or near May 25, 2007.  An immigration judge ordered him removed to Vietnam on July 20, 2007.

44.     Having no success on removing the Petitioner to Vietnam, ICE released the Petitioner on OSUP in October of 2007 after he spent over three months detained post removal order.  Petitioner's OSUP required that he attend check-ins each  month at the Los Angeles ICE Field Office and receive advanced permission to travel outside of the State of California.

45.     For the next 18 years, Petitioner faithfully reported to ICE's office in Los Angeles, California.  At first, he was required to check in every month but later the time between check-ins lengthened ending in once a year.  Petitioner never missed an appointment, violated the conditions of his OSUP, or moved without notifying ICE.

and is a United States citizen, currently living in H. and near Little Rock,

Arkansas.  The Petitioner maintained a valid employment authorization.  The couple began a nail and

spa business named Chic Nails and Spa, Inc.  Petitioner worked very hard at his business and was soon

able to open additional branches.  Petitioner has used his success to give back to the community and is

regularly known to be a dedicated and well-respected man.

47.     On October 16, 2025, Petitioner went to his scheduled ICE check-in appointment.  He

expected the same procedure as his previous check-in appointments: the officer would sign his paper

work and he would receive the date for his next check-in.  However, officers told him that he

completed his 90 days with an ankle monitor and he would be returned to annual check-ins.

48.     Petitioner was led to the back of the room and was immediately handcuffed and taken

into ICE custody.  He did not receive a Notice of Revocation of Release, and the officers did not give

any further explanation.

49.     Petitioner has now been detained for over four months.  Petitioner has not had an

informal interview or any formal conversation with ICE officers regarding his removal.  Petitioner has

not been given any paperwork or travel documents regarding any steps taken to remove him.  Petitioner

was willing to attend a consulate appointment but ICE officers indicated that it was no longer

necessary.

## LEGAL FRAMEWORK

**A.  Procedural Due Process and the *Accardi* Doctrine Require Certain Procedures When ICE Revokes Noncitizens' Orders of Supervision.**

50.     The Fifth Amendment's Due Process Clause protects all persons present in the

United States, regardless of immigration status, from arbitrary deprivations of liberty and property.

*Zadvydas*, 533 U.S. at 693. Freedom from imprisonment "lies at the heart of the liberty that [the

Due Process] Clause protects." *Id.* at 690. The government violates the procedural component of

the Due Process Clause when it deprives an individual of their liberty without sufficient procedural

protections. *See United States v. Salerno*, 481 U.S. 739, 755 (1987); *Mathews v. Eldridge,* 424

U.S. 319, 332 (1976).

51.     Under the *Accardi* doctrine, agencies are bound to follow their own rules that affect

the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that Board of Immigration Appeals must follow its own regulations in its exercise of discretion); *see also Gulf States Mfrs., Inc. v. Nat'l Lab. Rels. Bd.,* 579 F.2d 1298, 1308 (5th Cir. 1978) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid.").

52.     The Fifth Circuit has explained that this obligation flows directly from the Due Process Clause. *Gov't of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970) (per curiam) ("It is . . . well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it."). The government's obligations under this principle are at their highest when the regulations at question are designed to protect individual rights. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

53.     As established *supra*, DHS has promulgated two regulations that protect the individual rights of noncitizens who are redetained after being on OSUPs. 8 C.F.R. § 241.4(l)(1)–(2) and 8 C.F.R. § 241.13(i)(2)–(3).

54.     These regulations bear on a person's most fundamental individual right, liberty, which can only be taken away in compliance with procedural due process. *See Santamaria Orellana v. Baker*, No. 25-CV-1788, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (holding that the OSUP revocation regulations "are intended to provide due process in that they are fairly construed to be part of a procedural framework designed to ensure the fair processing of an action affecting an individual") (internal quotations omitted); *see also Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'").

55.     It is well established in the Fifth Circuit that failure to comply with the procedural

requirements in ICE's regulations governing OSUP revocation violates the *Accardi* doctrine and Due Process clause. *See Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 756 (S.D. Tex. 2008) ("DHS cannot constitutionally continue to detain Bonitto without complying with the procedures laid out in the regulations."); *see, e.g.*, *Villanueva v. Tate*, 25-CV-3364, 2025 WL 2774610, at *2–5 (S.D. Tex. Sept. 26, 2025) (ordering immediate release of noncitizen arrested at OSUP check-in after eight years of compliance because he was not provided with any reason for his arrest nor an interview, and the government represented that the arrest was due to "the current administration's renewed emphasis on removing criminal [noncitizens]"); *see also, Nguyen v. Hyde*, 788 F.Supp. 3d 144, 150 (D. Mass. 2025) (ordering immediate release where no concrete removal plan was in place prior to the revocation of release).

56.    There is a growing consensus among district courts across the country that when ICE revokes an OSUP in violation of its own regulations in 8 C.F.R. § 241.4 and § 241.13, detention is unlawful and **immediate release is appropriate**. *See, e.g.*, *Villanueva*, 2025 WL 2774610, at *12; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017); *Santamaria Orellana*, 2025 WL 2444087, at *6; *Abuelhawa v. Noem*, No. 25-cv-04128, 2025 WL 2937692, at 9-12 (S.D. Tex. Oct. 16, 2025) (ordering immediate release where the notice provided lacked specific changed circumstances.

**B. Substantive Due Process Bars ICE From Revoking Orders of Supervision Absent Changed Circumstances.**

57.    Civil detention is only constitutional if it serves a "legitimate nonpunitive governmental objective." *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997); *see also Jackson v. Indiana*, 406 U.S. 715, 737 (1972) (to comply with the Due Process Clause, detention must always bear "some reasonable relation to the purpose for which the individual was [detained]"); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018).

58.    The only constitutional purposes for immigration detention under 8 U.S.C. § 1231(a) are "'ensuring the appearance of [noncitizens] at future immigration proceedings' and

preventing danger to the community.'" *Zadvydas*, 533 U.S. at 690. Detaining a noncitizen to effectuate any other goal is without statutory basis and thus arbitrary and unconstitutional. *Jackson*, 406 U.S. at 737; *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992).

59.    Given the regulatory framework prescribing when and how an OSUP may be rescinded, *see supra* ¶¶ 23–33, redetention is only justified—and therefore only constitutional—if there has been a change in circumstances that leads the agency to believe that the noncitizen has become a danger or a flight risk in the intervening years, such as a new violent arrest or a failure to attend required check-ins, or that there is now a substantial likelihood of removal in the reasonably foreseeable future. *See Phongsavanh v. Williams*, No. 25-CV-00426, 2025 WL 3124032, at \*4–6 (S.D. Iowa Nov. 7, 2025) (ordering immediate release when "nothing in the record explains what has changed during the 25 years Phongsavanh was under supervision that would now justify his detention"); *see also* 8 C.F.R. § 241.4(i)(2).

60.    When there has been no new violent arrest, failure to attend a required check-in, or other change in circumstances indicating danger or flight risk, ICE may only rely on a reasonably foreseeable removal to justify detention. *See* 8 C.F.R. §§ 241.4(l)(2), (i)(2). But as explained *infra* ¶¶ 132–35, to establish reasonably foreseeable removal as a basis for detention—especially where there are specific, diplomatic barriers to removal—ICE must show individualized evidence as to removability, more than merely "good faith efforts," or "a theoretical possibility of eventually being removed." *Zadvydas*, 533 U.S. at 702; *Balza v. Barr*, No. 20-CV-00866, 2020 WL 6143643, at \*5 (W.D. La. Sept. 17, 2020). ICE must also provide individualized evidence of impending removal beyond "conclusory statements that they [are] taking steps to remove [petitioners]" or "unsubstantiated belief" that a travel document will be granted. *Escalante v. Noem*, No. 25-CV-00182, 2025 WL 2206113, at \*3–4 (E.D. Tex. Aug. 2, 2025).

61.    Changes in government priorities alone do not constitute a change in circumstances. *Villanueva,* 2025 WL 2774610, at \*5 ("[W]hile the new administration may have changed how it prioritizes the removals of noncitizens, it may not do so at the expense of fairness and due

process." To release such individuals on such whims, and to publicly desire to keep "the worst of the worst" in a "legendary" plantation-prison "for the rest of their lives," renders ICE detention punitive in nature. *See Foucha*, 504 U.S. at 80 (prohibiting punishment in civil detention context); *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896).

62.     In sum, without a demonstrable change to the noncitizen's danger to society, flight risk, or the foreseeability of their removal, ICE detention is unmoored from its "carefully limited" statutory purpose and therefore unconstitutional. *See Salerno*, 481 U.S. 739 at 755; *Jackson*, 406 U.S. at 737.

**C. Substantive Due Process and 8 U.S.C. § 1231(a)(6) Bar ICE from Detaining Noncitizens Indefinitely.**

63.     The Supreme Court has interpreted § 1231(a)(6) to authorize post-order detention only for "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States." *Zadvydas*, 533 U.S. at 689. Acknowledging that the government may need more than 90 days to effectuate removals in certain instances, the Supreme Court recognized that "six months is the appropriate period" for post-order detention. *Id.* at 680. However, "as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink." *Id.* at 701.

64.     To determine how long a person has been detained, most courts have concluded that the detention period is cumulative. Courts therefore consider a petitioner's previous periods in immigration detention; to do otherwise would allow the federal government to skirt constitutional requirements by continuously releasing and redetaining a noncitizen. *See e.g.*, *Escalante*, 2025 WL 2206113, at *3; *Chen v. Holder,* No. 14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015).

65.     While detention is presumptively reasonable for up to six months, *Zadvydas*, 533 U.S. at 701, reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal." *Id.* at 699. Once a noncitizen establishes that "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," such as showing that there exists a specific, diplomatic barrier to

removal, the government must "furnish evidence sufficient to rebut that showing." *Id.* at 680.

66.     Previous unsuccessful attempts—no matter from how long ago—to remove petitioners to third countries support a showing that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701 (ordering release when the government had failed to deport the petitioner three times to a number of countries); *Jabir v. Ashcroft*, No. 03-2480, 2004 WL 60318, at *2–9 (E.D. La. Jan. 8, 2004) (granting habeas relief to a petitioner after numerous countries refused to repatriate him); *Abel-Muhti v. Ashcroft*, 314 F. Supp. 2d 418, 424–25 (M.D. Pa. 2004) (ordering release of petitioner after refusal of several countries to accept petitioner).

67.     At bottom, if ICE "has no idea of when it might reasonably expect [a Petitioner] to be repatriated," then a "Court certainly cannot conclude that [a] removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Balza*, 2020 WL 6143643, at *5 (internal quotation marks and citation omitted).

## CLAIMS FOR RELIEF

### CLAIM I

### Unlawful Revocation of Order of Supervision
### Violation of Fifth Amendment Right to Procedural Due Process

#### (*Accardi*)

68.     Petitioner realleges and incorporates by reference the paragraphs above.

69.     Procedural due process requires that the government follow the regulations it promulgates that limit its power and the scope of its conduct. *Accardi*, 347 U.S. at 268.

70.     8 C.F.R. §§ 241.4(l)(1)–(2) and 241.13(i)(2–3) govern when and how the government may revoke a noncitizen's Order of Supervision. Here, the Petitioner's OSUP was revoked (a) by someone other than the Executive Associate Director where there is no reason to believe the case could not be referred to the Executive Associate Director, (b) without any notice provided (until the Petitioner was already in custody, if at all), (c) without any information

interview taking place before during EAD short... after current revocation... and (d) without any specific information regarding the likelihood of reasonably foreseeable removal, contrary to the procedures laid out in ICE's regulations. *See* 8 C.F.R. §§ 241.4(l)(1)–(2), 241.13(i)(2–3)

71.     Petitioner was arrested at a time when he was otherwise fully complying with his OSUP. There were no urgent or extenuating circumstances justifying his arrest without referral to the Executive Associate Director.

72.     To the extent Petitioner received a Notice of Revocation of Release at all, such notice was not provided until the Petitioner was already in custody, and contained standardized, boilerplate phrases, rather than personalized reasons for revocation, as the regulations and due process require. *See Sarail A. v. Bondi,* No. 25-CV-2144, 2025 WL 2533673, at *5 (D. Minn. Sept. 3, 2025); *Perez-Escobar v. Moniz,* 792 F. Supp. 3d 224, 225 (D. Mass. July 24, 2025); *M.S.L. v. Bostock*, No. 25-CV-01204, 2025 WL 2430267 at *4 (D. Or. Aug. 21, 2025).

73.     Petitioner did not receive any interview regarding the revocation of OSUP.

74.     Petitioner has not received information about removal to his home country. To the extent Petitioner has received any communication about removal to his home or third countries, that information has been extremely vague (*e.g.*, the boilerplate language in the Notice of Revocation of Release) or counter-productive (*e.g.*, that Mexico will not accept noncitizens over the age of 60).

75.     Because Petitioner was detained in violation of his procedural due process rights, his ensuing detention is unlawful. *Ceesay*, 781 F. Supp. 3d at 165; *Villanueva*, 2025 WL 2774610, at *11.

76.     Immediate release of Petitioner is therefore appropriate.

## CLAIM II

### Unlawful Revocation of Order of Supervision
### Violation of Fifth Amendment Right to Substantive Due Process

77.     Petitioner reallege and incorporate by reference the paragraphs above.

"Substantive due process requires that detention bear some reasonable relation to the purpose for which the individual was committed." *Jackson*, 406 U.S. at 738.

79.     The only constitutional purposes for immigration detention under 8 U.S.C. § 1231(a) are "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and citation omitted).

80.     When a noncitizen has been released pursuant to an OSUP, the government must make a determination that, *inter alia*, the noncitizen does not present a danger to the community, does not present a flight risk, and is not likely to be removed in the reasonably foreseeable future. *See* 8 C.F.R. §§ 241.4(e), 241.13(f)–(h).

81.     Therefore, redetention is only consistent with substantive due process if there is a change in circumstances leading the government to believe that the noncitizen now presents a danger, presents a flight risk, or is likely to be removed in the reasonably foreseeable future.

82.     Here, Petitioner was released from immigration detention on OSUP after the government made a determination that, *inter alia*, the Petitioner did not present a danger to the community, did not present a flight risk, and was not likely to be removed in the reasonably foreseeable future. *See* 8 C.F.R. §§ 241.4(e), 241.13(f)–(h).

83.     And, since being released, Petitioner has not been re-arrested, charged, or convicted of any offense; missed any OSUP appointments; or otherwise failed to comply with OSUP requirements. On the contrary, Petitioner has strengthened his community ties, lengthened his clean record, and established a pattern of continued compliance with his OSUPs.

84.     Petitioner has a specific, diplomatic barrier to removal which remains in place. This is either because he is from a country to which the United States does not regularly deport people and/or is unlikely to be accepted to a third country due to criminal history or age.

85.     Therefore, just as there was no lawful reason to hold Petitioner in detention at the time that he was released, there is no lawful reason to hold Petitioner in detention now.

87.     Immediate release of Petitioner is therefore appropriate.

## CLAIM III
## Unlawful Indefinite Detention

## Violation of 8 U.S.C. § 1231(a)(6) and Fifth Amendment Right to Substantive Due Process (*Zadvydas*)

88.     Petitioner reallege and incorporate by reference the paragraphs above.

89.     *Zadvydas* authorized detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." 533 U.S. at 679. Therefore, if a noncitizen can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must furnish evidence sufficient to rebut that showing." *Id.* at 680.

90.     Here, Petitioner has shown there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner has a specific, diplomatic barrier to removal.

91.     The government cannot furnish evidence sufficient to rebut this showing. In fact, the government previously determined that removal was not reasonably foreseeable as to Petitioner—indeed, that is why he was released pursuant to an OSUP. *See* 8 C.F.R. § 241.13.

92.     Because removal is not reasonably foreseeable, continued detention violates both 8 U.S.C. § 1231(a)(6) and the U.S. Constitution. *See Zadvydas*, 533 U.S. at 699.

93.     Immediate release of Petitioners is therefore appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully asks this Court to:

(1) Assume jurisdiction over this matter;

(2) Issue an order prohibiting Respondents from transferring him outside of this judicial district during the pendency of these proceedings;

(3) Declare Respondent's detention of Petitioner unlawful;

(4) Issue a writ of habeas corpus ordering that Respondents:

    a.  Immediately release Petitioner from custody and reinstate his OSUP with the same conditions in place at the time of his unlawful redetention, and

    b.  Be enjoined from redetaining Petitioner unless redetention complies with the processes required in 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3), and the Due Process Clause of the Fifth Amendment; and

(5) Grant such further relief as the Court deems just and proper.


Dated:  March 16, 2026


Heather A. Moilanen-Miller*

**Faragalla Law**
3925 W. Boynton Beach Blvd,
Suite 102
Boynton Beach, FL 33436
Tel: (800) 707-3038
Heather@faragallalaw.com

        /s/ Carol Kolinchak
        Carol A. Kolinchak
        La. Bar No. 22495
        709 Independence Street
        New Orleans, LA 70117
        (504) 259-8395
        cakolinchak@gmail.com


        *pro hac vice application forthcoming*

        *Attorneys for Petitioners*


## 28 U.S.C. § 2242 VERIFICATION STATEMENT


I am submitting this verification on behalf of the Petitioner. I am the Petitioner's attorney. I have discussed with Petitioner, and/or someone acting on his behalf, the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in this Petition are true and correct to the best of my knowledge.


        /s/ Carol A. Kolinchak
        Carol A. Kolinchak
        La. Bar No. 22495
        709 Independence Street
        New Orleans, LA 70117
        (504) 259-8395
        cakolinchak@gmail.com

        *Attorney for Petitioners*